FILED

2021 Aug-03  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KENO GRIMMETT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-cv-01010-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of the Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Keno Grimmett brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").  *See* 42 U.S.C. § 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

On June 19, 2018, Plaintiff filed an application for SSI alleging that he was disabled since June 12, 2018. (Tr. 102, 194). Plaintiff's initial claim was denied on December 3, 2018. (Tr. 102). Plaintiff requested a hearing to contest the denial. (Tr. 181, 187). On December 16, 2019, Administrative Law Judge Emilie Kraft ("ALJ") held a video conference hearing, where Plaintiff, Plaintiff's counsel, and a vocational expert ("VE") appeared. (Tr. 43-71). The ALJ affirmed the denial of benefits in a decision dated February 5, 2020. (Tr. 25-37). After the Appeals Council denied Plaintiff's request for review on June 26, 2020, that decision became the final decision of

Defendant Commissioner and therefore a proper subject of this court's review. (Tr. 1). *See* 42 U.S.C. § 405(g).

## II.     Facts

Plaintiff was 44 years old when he filed for disability benefits. (Tr. 194). He claims his disability started in June 2018 due to a heart aneurysm, split aortic artery, high blood pressure, mental health issues, and a skin disease. (Tr. 55-56, 225). Prior to filing for disability, Plaintiff worked in construction for a brief period in 2018. (Tr. 226). Plaintiff speaks English, has a high school education, and completed one year of college. (Tr. 225-26). Besides his employment as a construction worker, he has not been employed in the fifteen years preceding the date of filing his disability claim. (Tr. 226).

In June 2018, Plaintiff left his job when he had a heart aneurysm. His condition was treated with an aortic valve replacement and a coronary bypass graft on June 12, 2018. (Tr. 474-77). By April 30, 2019, Plaintiff's condition had improved substantially. (Tr. 618-25). Specifically, his aortic aneurysm was "controlled and stable." (Tr. 620). Although his condition improved, he still reports problems balancing, is limited in his ability to be exposed to extreme hot, extreme cold, and fumes. (Tr. 622). In June 2018, Plaintiff self-reported that he was 6'2" and weighed 239 pounds. (Tr. 104). At the time of his hearing in December 2019 before the ALJ, Plaintiff testified that he weighed 225 pounds. (Tr. 53).

Before the ALJ, Plaintiff stated he is "constantly hurting" and still experiences shortness of breath and dehydration. (Tr. 49). Specifically, he stated that he has tightness in his chest when he wakes up two or three times a week. (Tr. 50). There are about six or seven days in a thirty-day period where Plaintiff does not get out of bed. (Tr. 52). And, Plaintiff has shortness of breath every day. (Tr. 50). Because of his medications, he is drowsy and has mood swings, although he does

not take them every day to avoid certain side effects. (Tr. 51). He also has trouble eating and struggles with variation in his appetite. (Tr. 58). Plaintiff completes daily tasks around his house, such as cleaning dishes for approximately thirty minutes before taking a break. (Tr. 50). Plaintiff also drives, shops for groceries multiple times per week, and regularly walks outside. (Tr. 251-56).

Plaintiff also suffers from several mental health issues. He gets angry and agitated with his mother, daughter, and fiancée. (Tr. 53). Plaintiff also suffers from anxiety and panic attacks, which are triggered by unpredictable causes. (Tr. 56). He has difficulty sleeping. For example, he indicates that he sleeps three or four hours per night, has fatigue during the day, and suffers from post-traumatic stress disorder. (Tr. 55). Related to his sleep problems is his untreated sleep apnea. (Tr. 613). And, he testified that he does not socialize with others. (Tr. 53). However, he does interact with others on the phone. (Tr. 255).

On October 17, 2018, State Agency Psychologist Gloria Sellman reviewed Plaintiff's medical records. (Tr. 114-17). Sellman opined that Plaintiff had less than a full range of sedentary exertional ability, including lifting or carrying up to ten pounds. (*Id*.). She also determined that Plaintiff could sit, stand, or walk for about six hours in an eight-hour workday. (Tr. 115). She further found that Plaintiff could occasionally climb ramps and stairs, stoop, kneel, and crouch. (*Id*.). And, although he could occasionally balance, Plaintiff would not be able to climb ladders, ropes, or scaffolds. (*Id*.). She stated that Plaintiff should avoid exposure to extreme heat, cold, vibration, and all exposure to unprotected heights and hazards. (*Id*.).

On November 9, 2018, Plaintiff sought post-operative treatment from Dr. Hoffman, a cardiac surgeon, where he opined that Plaintiff was doing well. (Tr. 754). After further physical examination, Dr. Hoffman concluded that Plaintiff had normal cardiovascular and respiratory functioning and stated that he would see Plaintiff again in a year. (*Id*.). When Plaintiff returned to

Dr. Hoffman about a year later, on December 13, 2019, a CT angiogram showed that Plaintiff had a stable dissection repair, and another physical examination revealed that Plaintiff continued to have normal cardiovascular and respiratory functioning. (Tr. 749-50). Plaintiff expressed to Dr. Hoffman that he was experiencing some chest pain, but Dr. Hoffman determined that it was not related to Plaintiff's cardiac condition. (*Id.*). Dr. Hoffman ended the session stating that he would see Plaintiff again the following year. (Tr. 749).

On November 30, 2018, State Agency Consultant Dr. Larry Dennis reviewed the available records and opined Plaintiff would be able to carry out short and simple instructions and could attend to simple tasks for two-hours over an eight-hour day. (Tr. 105-09, 117-19).  Plaintiff could also have casual contact with the public, and any criticism should be "given in a non-confrontational manner." (Tr. 118). He thought Plaintiff would work best in a well-spaced workstation with familiar coworkers. (*Id.*).

On May 2, 2019, Dr. Tawnya Brode, another State Agency Consultant, opined that Plaintiff could understand, remember, and carry out simple instructions. (Tr. 627-29). He had adequate attention, concentration, persistence, and pace to allow him to complete a full workday and workweek. (*Id.*). Plaintiff could also maintain appropriate behavior in the context of limited social demands and public contact. (*Id.*). Dr. Brode further found that Plaintiff had the ability to respond appropriately to supervisors, make simple decisions, and cope with the demands of a work-like environment. (Tr. 627-29).

Plaintiff sought a psychological evaluation from Dr. Jack Bentley, Jr. on November 30, 2018. (Tr. 613-15). Dr. Bentley observed that Plaintiff had no limitations in his receptive or expressive communication skills, and Plaintiff provided relevant responses to all questions asked. (Tr. 614). Plaintiff then successfully recited six digits forward and three backwards, and he was

able to "perform serial 7's and 3's from 100." (Tr. 614). Dr. Bentley reported that even though Plaintiff suffers from "Depressive Disorder with Anxiety due to Medical Reasons," he successfully completed his daily living activities without assistance. (*Id*.). Dr. Bentley added that, despite his marked limitations in his ability to sustain complex or repetitive work-related activities, Plaintiff was competent to manage funds. (*Id*.). Thus, Plaintiff's impairment regarding simple tasks would fall in the mild to moderate range for psychiatric reasons. (*Id*.). Dr. Bentley thought there would be a similar limitation in Plaintiff's ability to communicate effectively with coworkers and supervisors, and most of Plaintiff's work-related restrictions would stem from his health problems. (*Id*.). At that time, Dr. Bentley regarded Plaintiff's mood as "moderately dysphoric and congruent." (*Id*.). Dr. Bentley found no evidence of unusual "mentation." (*Id*.). Although Plaintiff exhibited some anxiety regarding his chest pain, he was alert and oriented. (*Id*.).

Plaintiff's treating physician, Dr. James McCain, drafted a Social Security Disability Questionnaire and found that Plaintiff suffered from shortness of breath. (Tr. 609-10). Dr. McCain further opined that Plaintiff's disability would continue for one year. (Tr. 608). Because of his conditions, Plaintiff could sit for less than thirty minutes at a time, and he could stand for less than fifteen minutes at a time. (*Id*.) As a result, Plaintiff would be off task for thirty percent of the day and would miss five days of work a month due to his conditions. (*Id*.). Dr. McCain's treatment notes from 2018 and 2019 indicate that Plaintiff's hypertension was stable and improving. (Tr. 389, 395, 409, 416, 422). Plaintiff's post-surgery notes stated that he had normal cardiovascular and respiratory functioning. (Tr. 399, 406, 420, 427, 727, 735).

Finally, on December 16, 2019, Plaintiff sought a mental health evaluation from Kristy Phillips, a licensed social worker. (Tr. 746-47). In her treating source statement, Phillips stated that she thought Plaintiff could not understand, remember, or carry out simple instructions. (Tr.

746). She further opined that Plaintiff could not maintain attention, concentration, and pace for periods of at least two hours, perform activities within a schedule, or be punctual and sustain ordinary routine. (*Id*.). Phillips concluded that Plaintiff could not handle infrequent work changes, interact with supervisors or coworkers in a socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. (*Id*.). As a result, she opined that Plaintiff's psychological symptoms would cause him to miss twenty days of work in a thirty-day period and be off task eighty-five percent of the time during an eight-hour workday. (*Id*.).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*

If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since June 19, 2018 and had the following severe impairments: "aortic dissection and aortic aneurysm status post coronary artery bypass grafting [] and aortic value replacement, coronary artery disease [], hypertension, anemia, major depressive disorder [], post-traumatic stress disorder [], and obesity[]." (Tr. 27-28). These findings satisfy steps one and two of the inquiry. Further, the ALJ found Plaintiff also has the following non-severe impairments: anxiety and skin disease. (Tr. 28).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart B, Appendix 1 ("Listings"). In particular, Plaintiff's mental impairments,

"considered singly and in combination," did not meet Listings 12.04 (depressive, bipolar, and related disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma-and-stressor-related disorders). (Tr. 29). Further, the ALJ found that Plaintiff's obesity was not severe. (Tr. 28). While the ALJ noted that impairments exist, the ALJ concluded that the impairments are not "equivalent in severity to the criteria of any listed impairment." (Tr. 28). Rather, the ALJ found that Plaintiff was, at most, "moderate[ly]" limited in "understanding, remembering, or applying information"; "interacting with others"; "concentrate[ing], persist[ing], or maintain[ing] pace"; and the "ability to adapt or manage himself." (Tr. 30).

In determining Plaintiff's RFC at step four, the ALJ found Plaintiff is able to perform sedentary work as defined in 20 C.F.R. § 416.96(a), with the exception of occasionally climbing ramps and stairs. (Tr. 31). In addition, Plaintiff should never climb ladders, ropes, or scaffolds. He could frequently balance and occasionally stoop, kneel, crouch, and crawl. (Tr. 31). With respect to environmental factors, he could occasionally be exposed to temperature extremes, vibrations, dust, odors, fumes, and pulmonary irritants. (Tr. 31). However, Plaintiff could not be exposed to unprotected heights, hazardous machinery, or commercial driving. (Tr. 31).

With respect to Plaintiff's mental impairments, he could still understand, remember, and carry out simple instructions. Although he should have no more than occasional contract with the general public. (Tr. 31). But, but he could adapt to infrequent, gradual changes in the work environment. (*Id*.).

In summary, the ALJ found the following:

[Plaintiff maintained a] residual functional capacity to perform sedentary work that … no treating, examining, or reviewing doctor has indicated that [Plaintiff] was disabled or otherwise unable to perform work related activities. Physically, [Plaintiff] had a ruptured aortic aneurysm in June 2018 and had open heart surgery to treat this event …. Afterwards at a follow-up appointment, he presented with no complaints of chest pain or shortness of breath and was doing quite well overall.

8

> His cardiac issues were stable and controlled…. Moreover, [Plaintiff's] records document that he ambulated without assistance, performed his activities of daily living unassisted, and no limitation of mobility and had normal ranges of motion in December 2019. [Plaintiff] denied muscular aches or weakness. He also denied extreme stress, depression, drug abuse and alcohol abuse.

(Tr. 32-33).

Finally, at step five, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 35). Rather, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 35). The ALJ relied on the opinion of the VE, who said that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 68-69). During the VE's testimony, the ALJ repeated her findings at step four and asked the following hypothetical question:

> [ALJ:] Please assume a hypothetical individual of the same age and education as [Plaintiff] with the past jobs you just described. Further assume that individual would be limited to sedentary work as that term is defined in the regulations. Could occasionally climb ramps and stairs. Never climb ladders, ropes or scaffolds. Could frequently balance and occasionally stoop, kneel, crouch and crawl. Could have occasional exposure to temperature extremes, vibration as well as dust, odors, fumes and pulmonary irritants. And no exposure to unprotected heights, hazardous machinery or commercial driving. Could understand, remember and carry out simple instructions. And have no more than occasional contact with the general public. And could adapt to infrequent gradual changes in the work environment. I'm assuming that individual could not perform the [Plaintiff]'s past work?
>
> [VE:] That's correct.
>
> [ALJ:] Would there be other work at the sedentary level such an individual could perform?
>
> [VE:] Yes, ma'am.

(Tr. 68-69). And, based on the finding that Plaintiff could perform those particular jobs, the ALJ determined that Plaintiff is "not disabled." (Tr. 37).

III.    **Plaintiff's Argument for Reversal**

Plaintiff argues that the ALJ failed to accord proper weight to his treating physician, Dr. James McCain, and his social worker, Kristy Phillips, under the treating physician rule. (Doc. # 12 at 18). Further, Plaintiff argues the ALJ's finding that there are jobs in the economy that Plaintiff can perform was not based on substantial evidence because the ALJ relied on VE testimony that was not based on a correct or full statement of Plaintiff's limitations and impairments. (Doc. # 12 at 24).

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court

acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

For the reasons stated below, the court concludes the ALJ did not err in his findings or conclusions.

### A.    The ALJ Properly Evaluated the Opinion of Dr. McCain and Kristy Phillips

Plaintiff argues that the ALJ failed to give proper weight to Dr. James McCain, his treating physician, and Kristy Phillips, a social worker (and who notably is *not* a physician). (Doc. # 12 at 19-24). To the contrary, the court concludes that the ALJ properly weighed the opinions of both Dr. McCain and Phillips.

With respect to Dr. McCain, Plaintiff asserts that the ALJ erred by not giving substantial weight to his opinions about Plaintiff's limited physical capacities as Plaintiff's treating physician.[1] (Doc. # 12 at 18-24). For claims filed on or after March 27, 2017 (as it was here), the revised regulations do not permit the reviewing ALJ to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." § 404.1520c(a); *see Glasby v. Comm'r of Soc. Sec.*, 2021 WL 2562420, at *2 (rejecting same argument raised by Plaintiffs'

---

[1] Plaintiff argues without any support that this court should ignore the new regulations and apply the "treating physician rule" previously recognized by the Court of Appeals. (*See* Docs. # 12 at 18; 14 at 2 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 828 (2003)). The Eleventh Circuit case law Plaintiff cites applied the *superseded* C.F.R. (*See* Doc. # 12 at 21 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see Glasby v. Saul*, 2021 WL 2562420, at *2 (N.D. Ala. May 3, 2021) (internal citations omitted) (holding that Eleventh Circuit case law does not control because it applied standard no longer in effect). Importantly, Plaintiff does not challenge the validity of the new regulations, which "eliminate the treating physician rule." *Uresti v. Comm'r of Soc. Sec.*, 2021 WL 2644549, at *3 (M.D. Fla. June 28, 2021). Thus, the court will apply the current regulations. *See Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908 n.4 (11th Cir. 2021) (acknowledging that the "SSA amended its rules in 2017 to remove [the] 'controlling weight' requirement" (citing 20 C.F.R. § 404.1520c)); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (holding that the claim filed after March 27, 2017 is not subject to "treating physician rule").

counsel on the grounds that "the Commissioner revised social security regulations regarding the evaluation of medical evidence for all claims filed on or after March 27, 2017"). Instead of requiring the ALJ to defer to a treating physician, the revised regulations direct the ALJ to consider various factors in determining the persuasiveness of a medical opinion, including "the objective medical evidence and supporting explanations presented by [the] medical source" and the "consistency [of] the medical opinion … with the evidence from other [ ] sources." § 404.1520c(c)(1), (2).

Dr. McCain opined that "[Plaintiff] could perform at less than a sedentary exertional level and would miss 5 days a month." (Tr. 34). The ALJ correctly applied the factors in determining that Dr. McCain's opinions were unpersuasive because they are "not supported by the objective evidence." (*Id.*). For example, the ALJ noted that Plaintiff "walks for exercise per his cardiology and Qualify of Life notes. He also stated that he walks in his function reports …. He does not note chest pain at his Qualify of Life Visits."[2] (*Id.*). Indeed, Dr. McCain's "Treating Physician Statement" is merely a single form where the physician only checks off a list of symptoms without providing any explanation of the evidence that supports the decision.[3] Further, the ALJ considered the fact that Dr. McCain's opinion was inconsistent with the evidence that Plaintiff "has done well post-surgery" based on his CT scans and medical notes. (Tr. 34 (citing Tr. 749-57)).[4] Thus, under

---

[2] Although the revised regulations provide five factors to be used in determining the persuasiveness of a medical opinion, the only factors an ALJ must consider are "supportability" and "consistency." § 404.1520c(b)(2). Both of these factors were considered by the ALJ here. (Tr. 34).

[3] The court notes that Plaintiff's counsel should be well aware of the shortcomings of arguing that the ALJ erred in failing to rely on Dr. McCain's conclusory checklist form, when unsupported by the objective medical evidence has already been rejected as such by this court. *Id.* (affirming ALJ who discredited Dr. McCain's opinion where Dr. McCain's physician statement was conclusory and unsupported by the record). *See, e.g., Vice v. Berryhill,* 2017 WL 4340513, at *6 (N.D. Ala. Sept. 29, 2017) ("Dr. McCain's assessment … is wholly unsupported by any of his own treatment records.").

[4] Again, although the revised regulations provide five factors to be used in determining the persuasiveness of a medical opinion, the only factors an ALJ must consider are "supportability" and "consistency." § 404.1520c(b)(2). Both of these factors were considered by the ALJ here. (Tr. 41).

the revised regulations, the ALJ did not err when he determined Dr. McCain's opinions were not as persuasive as the other record evidence.[5]

Similarly, the ALJ properly weighed Phillips's report.[6] As a threshold matter, Phillips is not a physician or medical professional, and the ALJ found that her opinion is not "an acceptable medical source [such] that [she] can provide an opinion." (Tr. 30, 35). *See Kirby v. Comm'r of Soc. Sec.*, 2019 WL 4749892, at *5 (N.D. Ala. Sept. 30, 2019) (rejecting Plaintiff's counsel's argument that ALJ erred in giving little weight to opinion of therapist employed at same health care provider as Phillips because she "was not a physician at all"), *aff'd sub nom. Kirby v. Soc. Sec. Admin., Comm'r*, 819 F. App'x 828 (11th Cir. 2020). In any event, even if Phillips's opinion was subject to the weighing of factors under § 416.920c(c), the ALJ properly evaluated her opinion and found that Phillips's report was "not consistent with the treatment notes and the other mental opinions in the record." (Tr. 35). For example, in her examination notes, Phillips noted that Plaintiff's speech was clear, his thought process was logical, his other cognitive functions were within "normal limits," and his depressive disorder was moderate (Tr. 739). This is inconsistent with her report that Plaintiff cannot "understand, remember[,] or carry out very short and simple

---

[5] Even if Plaintiff's claim was filed before March 27, 2017 such that the "treating physician rule" was still in effect, Eleventh Circuit precedent does not require the ALJ to award Dr. McCain's opinions substantial weight. Under that line of case law, an ALJ does not need to give a treating physician's medical opinion substantial weight if good cause exists for discrediting that opinion. *Cain v. Comm'r of Soc. Sec.* 777 Fed. App'x 408, 409 (11th Cir. 2019). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Because Dr. McCain's opinions were not bolstered by the evidence, were contrary to the evidence, and were conclusory, the ALJ was permitted to not award those opinions substantial weight.

[6] Notably, Phillips, as a social worker, is not an "acceptable medical source[]" and thus, her opinion is not afforded any weight under the inapplicable treating physician rule. 20 C.F.R. § 416.913(a); *Baker v. Astrue, Soc. Sec. Admin.*, 2012 WL 6685646, at *3 (N.D. Ala. Dec. 20, 2012); *Boyett v. Apfel, Soc. Sec. Admin.*, 8 F. App'x 429, 433 (6th Cir. 2001); *see Cowley v. Berryhill*, 312 F. Supp. 3d 381, 383 (W.D.N.Y. 2018). Rather, Phillips's testimony is "recognized as 'other sources'"; it is not required to be given substantial or controlling weight in the ALJ's evaluation. *Baker*, 2012 WL 6685646, at *3.

instructions" or "maintain attention." (Tr. 746). Further, the ALJ indicated that the objective medical evidence, including "treatment notes" and "mental status evaluations," does not support her conclusions. (Tr. 35). Thus, the ALJ did not err, especially where Plaintiff does not point to any error in the ALJ's analysis of Phillips's opinions.

## B.    The ALJ Properly Considered the VE's Testimony

Finally, Plaintiff argues that the ALJ erred in finding that he is not disabled because "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 36). Specifically, Plaintiff alleges that this decision is "not based on substantial evidence" because the "ALJ relied on [VE] testimony that was not based on a correct or full statement of [Plaintiff's] limitations and impairments." (Doc. # 12 at 24). A "VE's testimony will constitute substantial evidence if the ALJ 'pose[s] a hypothetical question which comprises all of the claimant's impairments.'" *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938 (11th Cir. 2011) (internal citation omitted). To be sure, the ALJ did precisely that. The ALJ concluded,

> [a]fter careful consideration of the entire record, the [ALJ] finds that [Plaintiff] *has a residual functional capacity to perform sedentary work* as defined in 20 C.F.R. § 416.967(a) except occasionally climb ramps and stairs. The individual should never climb ladders, ropes or scaffolds. He could frequently balance. He could occasionally stoop, kneel, crouch and crawl. He could have occasional exposure to temperature extremes, vibration, dust, odors, fumes, and pulmonary irritants. The individual could not have exposure to unprotected heights, hazardous machinery or commercial driving. The individual could understand, remember and carry out simple instructions. The individual could have no more than occasional contact with the general public. He could adapt to infrequent, gradual changes in the work environment.

(Tr. 31) (emphasis added). The ALJ considered Plaintiff's pain and limitations in determining that Plaintiff has a "residual functional capacity to perform sedentary work." (Tr. 31-32). In asking the VE to opine on whether there are jobs in the economy that Plaintiff could perform, the ALJ repeated all of the relevant "limitations and impairments." (Tr. 68). The VE confirmed that there

is "other work at the sedentary level" that Plaintiff could perform with his limitations. (Tr. 69). And, Plaintiff has not specified any impairment or limitation that the ALJ omitted in her hypothetical question upon which the VE relied on in providing her opinion. Thus, the ALJ properly relied on the VE's opinion in finding that there are "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 36).

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 3, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE